# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ALEXIS DEKANY, | CASE NO. 5:16CV01829 |
| Plaintiff, | |
| | JUDGE JOHN R. ADAMS |
| vs. | |
| | **ORDER** |
| CITY OF AKRON, OHIO, et al., | |
| Defendants. | |

This matter is before the Court on Defendant Eric Paull's Motion for Reconsideration of the Court's March 28, 2019 Opinion. Specifically, Paull asks the Court to reconsider its order denying summary judgment on Plaintiff Alexis Dekany's § 1983 claim for excessive force, finding triable issues of fact as to whether Paull acted under the color of state law. Dekany has responded to the motion for reconsideration, and Paull has replied. For the reasons discussed, the Court hereby ORDERS that Paull's motion for reconsideration (Doc. 356) is DENIED.

Because the facts of this matter are set forth fully in the Court's March 28, 2019 Opinion (Doc. #350), the Court will not repeat them here. Rather, the Court incorporates herein by reference its previous discussion of the facts. (*See* Doc. 350, PageID# 7170 – PageID# 7292.)

To establish a cause of action under § 1983, a plaintiff must show: (1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law. *American Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 40-50 (1999); *McQueen v. Beecher Cmty. Schs.*, 460, 463 (6th Cir. 2006). Thus, Dekany cannot prevail on her § 1983 claim unless she demonstrates that Paull acted under the color of law when her rights were violated.

Accordingly, this Court's March 28, 2019 Order examined whether Paull, an off-duty police officer during all times relevant, was acting under color of law when he allegedly violated Dekany's constitutional rights. In determining whether a police officer acted under color of state law "[t]he fact that a police officer is on or off duty, or in or out of uniform is not controlling. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) (citation omitted). Accordingly, while an off-duty police officer may be liable under § 1983, we must be cognizant of the principle that "[a]cts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Id.* (citing *Monroe v. Pape*, 365 U.S. 167, 185 (1961)).

In his motion for summary judgment, Paull argued that his relationship with Dekany was a purely private undertaking. Therefore, according to Paull, any actions taken in pursuit of that relationship constituted private conduct not taken under color of law.

In its March 28, 2019 Order, this Court recognized that private conduct typically is not attributable to the state. However, the Court held that "when a police actor undertakes a purely private action not typically attributable to the state, but does so while invoking his authority as a police officer *** a plaintiff who is injured by the police officer's action may be able to establish the state action required to sustain a § 1983 action." (Doc. 350, PageID# 7189, citing *Pickard v. City of Gerard*, 70 F. Supp. 2d 802, 806 (N.D. Ohio 1999).) The Court found that this is indeed the situation in this case.

This Court held that triable issues of fact remain regarding whether Paull invoked his status as a police officer to the extent he acted under color of law in pursuit of his relationship with Dekany. Specifically, the Court held:

> The cumulative weight of the evidence creates a question of fact as to whether Paull acted under color of law. This evidence demonstrates that Paull repeatedly asserted his purported authority as a police officer in furtherance of his private relationship with Dekany. To begin, Paull used his police-issued service weapon to physically assault Dekany during the October 2014 incident, when he held the gun to her head. (Dekany p. 153-154.) Another manifestation of police authority occurred during the December 2014 incident. Prior to Sergeant Kelly's arrival, Paull, while in full police uniform, questioned Dekany's neighbor regarding the owner of the truck that Dowler had parked outside her residence. (Paull p. 219-220.) Moreover, Paull told Dekany that his connections as an officer made him "untouchable" and immune from punishment, making her feel helpless and without recourse. (Dekany p. 263.) Further, during his so-called "Tour of Alexis" in April 2015, Paull sent Dekany a picture or pictures of his service weapon as part of his attempt to terrorize and manipulate her. (Dekany p. 287.) One day earlier, he had expressed a desire via text message to shoot Dowler in the head, presumably with his department-issued gun, out of jealousy and love for Dekany. (Paull p. 256-257.) Paull also extensively used police department databases, and in particular Accurint and OHLEG, to track Dekany's boyfriends and learn their criminal histories – information he then used to stalk and manipulate Dekany. (Paull p. 98-100.) Although Paull apparently accessed the databases while off duty through his personal computer, tablet, or phone, he had access to OHLEG and Accurint solely due to his status as a police officer. (*See id.*) Indeed, Paull pled guilty to multiple counts of criminal misuse of OHLEG. Paull also threatened to exercise his purported police authority to send one of Dekany's romantic interests to jail based on warrants discovered through his illegal use of OHLEG, even though Paull believed the warrants to be outside of his jurisdiction. (Paull p. 281-282.)
>
> In all of these instances, beginning with the first alleged act of violence against Dekany in October 2014, Paull used some degree of purported state authority to pursue his private relationship with Dekany. Under the specific facts of this case, these not-infrequent displays of purported authority converted Paull's purely private endeavors, which typically would not be attributable to state action, to actions taken under color of law. *See Pickard¸* 70 F. Supp. 2d at 806.

In his motion for reconsideration, Paull argues that there is no sufficiently close nexus between the actions of Mr. Paull taken during his private romantic relationship with Dekany and

the state itself, such that Mr. Paull's actions may not be attributed to the state. Paull essentially argues that none of Paull's acts viewed individually arise to a showing of state authority.

The Court disagrees, as Paull's argument misses the point. The Court has held that Paull's actions, cited above, cumulatively give rise to a question of fact regarding whether Paull invoked his authority as a police office during the course of his relationship with Dekany such that his alleged actions in violation of her constitutional rights were taken under color of law. The Court stands by its ruling.

Paull also argues that the Court erred in "reject[ing] Mr. Paull's argument that Plaintiff had the burden of showing that Mr. Paull was acting under color of law as to each incident in which she alleged a constitutional violation occurred." (Doc. 356, PageID# 7247.) Paull invokes the Sixth Circuit's caution against viewing too broadly the circumstances relevant to the constitutional claims in § 1983 actions. (*Id*.) Paull urges the Court to consider Dekany's claims "in segments," pursuant to the Sixth Circuit's decision in *Dickerson v. McClellan*, 101 F.3d 1151 (1996).

In *Dickerson*, the decedent's estate brought two § 1983 claims, one for officers' violation of the knock-and-announce rule, and another for their use of excessive force once inside the home. *Dickerson*, 101 F.3d at 1154. The *Dickerson* plaintiffs claimed "the officers should be held accountable for creating the need to use excessive force by their unreasonable unannounced entry." *Id*. at 1160. The Sixth Circuit disagreed, holding that, "[a]lthough both claims are premised on Fourth Amendment violations, the violation of the knock and announce rule is conceptually distinct from the excessive force claim." *Id.* at 1162. Thus, the Sixth Circuit found "good reason" to "carve up the incident into segments and judge each on its own terms." *Id*. at 1161. That is, the appellate court instructed that a trial court should first identify the seizure at

4

issue in an excessive force claim, and then examine "whether the force used to effect that seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances." *Id.*

Thus, it is apparent that *Dickerson*'s mandate to analyze excessive force claims "in segments" pertains to the determination of whether a constitutional violation actually occurred in an excessive force case – not the question of whether officers acted under color of law. Indeed, there was no question that the officers in *Dickerson* were acting under color of law, as they were performing official police duties. *Dickerson* does not address the questions of when an off-duty police officer's actions invoke state authority to the extent such actions are taken under color of law. As such, *Dickerson* does not control this Court's color-of-law analysis in the instant case.

*Dickerson* is further distinguishable from the case at hand given the timeframe at issue in both matters. In *Dickerson*, "the officers estimated that after they arrived on the scene, [the] entire sequence of events took place within about one minute." *Id.* at 1155. Here, the psychological and physical abuse alleged by Dekany, and Paull's not-infrequent invocation of his police authority, took place over many months. Accordingly, this Court held in its March 28, 2019 order that:

> To the extent Paull and the City of Akron contend that Dekany must undertake to prove that Paull acted under color of law on each date an alleged constitutional violation allegedly occurred, the Court rejects this argument. In this case, the alleged abuse was both physical and psychological, with Paull purportedly invoking his "untouchable" status as a police officer to manipulate Dekany. This insidious type of abuse, once it occurs, may have lasting effects that cannot be confined to specific occurrences or calendar dates. The fact that Paull invoked his official status to create the impression that he was above the law, combined with the other evidence, makes Paull's invocation of his official authority so pervasive in the relationship that a question of fact exists as to whether he acted under color of law for purposes of all of Dekany's § 1983 claims.

5

(Doc. 350, PageID# 7190 – PageID# 7191.)  In the Court's view, the unique facts of this case, and Paull's continuing psychological and physical threats to Dekany using at least some aspect(s) of his police authority or equipment, require the finding that a triable issue of fact remains as to whether Paull acted under color of law during all or part of the relevant events.

In the March 28, 2019 Order, this Court held that, under the law, "Paull may not use his authority as a police officer as a weapon of manipulation and abuse, and then shield himself from liability under § 1983 by claiming his conduct was private and not state action." (*Id.*, PageID# 7191.)  Thus, the Court found that Dekany has created a question for trial regarding whether Paull acted under color of law for purposes of her § 1983 claim.  Paull's motion for reconsideration has not set forth any compelling reason for the Court to alter its ruling.  Accordingly, Defendant Eric Paull's Motion for Reconsideration of the Court's March 28, 2019 Opinion (Doc. 356) is DENIED.

    IT IS SO ORDERED.


DATED:  7/9/19                                                            */s/ John R. Adams*
                                                                                    John R. Adams
                                                                                    UNITED STATES DISTRICT JUDGE